UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

Healthcare Distribution Alliance,

    *Plaintiff*,

v.

Mark D. Boughton, in his official capacity as Commissioner of the Connecticut Department of Revenue Services, and William Tong, in his official capacity as Attorney General for the State of Connecticut,

    *Defendants*.

Case No. 3:25-cv-1724 (OAW)

## DECLARATION OF MARTIN IGEL IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

I, Martin Igel, am over 18 years of age and hereby declare as follows:

1. I am the Vice President of Strategic Sourcing and Manufacturer Services at Cardinal Health, Inc. ("Cardinal Health") and provide this declaration based on my own personal knowledge.

2. Wholesale distributors in the pharmaceutical industry play a critical role in ensuring the safe, efficient, and reliable delivery of healthcare products every day from manufacturers to pharmacies, hospitals, and other healthcare providers. Distributors provide sophisticated services, including thermally controlled packaging and transport, electronic data reporting, advanced analytics, administrative third-party contract management, exception management systems, quality controls, and inventory logistics.

3. Distributors efficiently and securely serve pharmacies, hospitals, clinics, long-term care facilities, and other patient-facing organizations. They do this through a network of

distribution centers geographically dispersed across the nation. These distribution centers and the systems they support provide consistent just-in-time delivery to their service areas so that providers can reliably deliver high quality care to patients.

4. Cardinal Health serves pharmacies, hospitals, and other healthcare providers in Connecticut. But Cardinal Health does not have a distribution center in Connecticut. Instead, products we distribute in Connecticut are shipped from distribution centers outside Connecticut.

5. Wholesale distributors do not set or control the Wholesale Acquisition Cost ("WAC") for drug products. Instead, manufacturers set the WAC for drug products on a national basis, and those decisions occur outside Connecticut. Wholesale distributors also operate on a national (rather than a state-by-state) basis, under contracts with manufacturers that are not tailored to individual states. Given the integrated nature of the pharmaceutical supply chain, wholesale distributors structure their contractual relationships with manufacturers and downstream customers with multistate operations through national agreements that apply uniformly across states.

6. Cardinal Health faces imminent and irreparable injury from the Drug Price Cap. When manufacturers inevitably increase prices for one or more covered products above the 2025 WAC (adjusted by the CPI), wholesale distributors (and their officers and employees) will face severe potential liability (including criminal sanctions) under the statute even though they do not set or control the WAC.

I declare under penalty of perjury that the foregoing is true and correct.

Date:   October 17, 2025

_Martin Igel_
Martin Igel (Oct 17, 2025 14:03:12 EDT)
_____
Martin Igel
Vice President
Strategic Sourcing and Manufacturer Services
Cardinal Health, Inc.