# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HEALTHCARE DISTRIBUTION ALLIANCE, | : | Civil Action No.: 3:25-cv-01724-OAW |
| *Plaintiff*, | : | |
| v. | : | |
| MARK D. BOUGHTON, in his official capacity as Commissioner of the Connecticut Department of Revenue Services, and WILLIAM TONG, in his official capacity as Attorney General for the State of Connecticut, | : | |
| *Defendants*. | : | NOVEMBER 25, 2025 |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

ARGUMENT ........................................................................................................................ 2

I.      HDA Is Likely to Succeed on Its Claim That the Drug Price Cap is
Unconstitutional. ........................................................................................................ 2

II.     HDA's Members Will Suffer Irreparable Harm Absent An Injunction. ..................... 7

III.    The Balance of Hardships and Public Interest Militate in Favor of an Injunction. .......... 10

CONCLUSION................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*A.H. ex rel. Hester v. French*,
 985 F.3d 165 (2d Cir. 2021) ................................................................................ 8

*Ass'n for Accessible Meds. v. Ellison*,
 140 F.4th 957 (8th Cir. 2025) ........................................................................ 2, 3

*Ass'n for Accessible Meds. v. Frosh*,
 887 F.3d 664 (4th Cir. 2018) ..................................................................... 2, 3, 6

*Ass'n for Accessible Meds. v. James*,
 974 F.3d 216 (2d Cir. 2020) ................................................................................ 5

*Ass'n for Accessible Meds. v. Raoul*,
 No. 24 C 544, 2025 WL 2764558 (N.D. Ill. Sept. 26, 2025) ........................... 2, 3

*Baldwin v. G.A.F. Seelig, Inc.*,
 294 U.S. 511 (1935) ............................................................................................ 3

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*,
 476 U.S. 573 (1986) ............................................................................................ 3

*C & A Carbone, Inc. v. Town of Clarkstown*,
 511 U.S. 383 (1994) ............................................................................................ 5

*Camps Newfound/Owatonna, Inc. v. Town of Harrison*,
 520 U.S. 564 (1997) ............................................................................................ 5

*Healthcare Dist. All. v. Zucker*,
 Nos. 18 Civ. 6168 (KPF), 18 Civ. 8180 (KPF), 18 Civ. 9830 (KPF),
 2021 WL 12103902 (S.D.N.Y. Oct. 20, 2021) ..................................................... 5

*Healthcare Distrib. All. v. Zucker*,
 353 F. Supp. 3d 235 (S.D.N.Y. 2018),
 *rev'd in part on other grounds sub nom.*,
 *Ass'n for Accessible Meds. v. James*,
 974 F.3d 216 (2d Cir. 2020) ................................................................................ 5

*Healy v. Beer Inst.*,
 491 U.S. 324 (1989) ........................................................................................ 3, 5

*Hughes v. Oklahoma*,
 441 U.S. 322 (1979) ............................................................................................ 5

*Hunt v. Wash. State Apple Advertising Comm'n*,
   432 U.S. 333 (1977) ............................................................................................... 10

*Kravitz v. Tavlarios*,
   No. 20-2579-cv, 2021 WL 5365582 (2d Cir. Nov. 18, 2021) ................................... 2

*Miller v. Egan*,
   828 A.2d 549 (Conn. 2003) ..................................................................................... 9

*Mont. ex rel. Knudsen v. Eli Lilly & Co. (In re Insulin Pricing Litig.)*,
   No. 2:23-cv-04214, 2025 WL 2573400 (D.N.J. Sept. 5, 2025) ............................... 2

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992) ................................................................................................. 9

*N.Y. Progress & Prot. PAC v. Walsh*,
   733 F.3d 483 (2d Cir. 2013) ................................................................................... 10

*Nat'l Fuel Gas Distrib. Corp v. Christian*,
   --- F. Supp. 3d ---, No. 1:25-CV-0525 (GTS/MJK),
   2025 WL 2634310 (N.D.N.Y. June 16, 2025) .......................................................... 9

*Nat'l Pork Prods. Council v. Ross*,
   598 U.S. 356 (2023) ......................................................................................... passim

*Ore. Waste Sys., Inc. v. Dep't of Env't Quality*,
   511 U.S. 93 (1994) ................................................................................................... 6

*Pharm. Rsch & Mfrs of Am. v. Concannon*,
   249 F.3d 66 (1st Cir. 2001),
   aff'd sub nom.,
   *Pharm. Rsch. & Mfrs. of Am. v. Walsh*,
   538 U.S. 644 (2003) .............................................................................................. 6, 7

*Pharm. Rsch. & Mfrs. of Am. v. District of Columbia*,
   406 F. Supp. 2d 56 (D.D.C. 2005),
   aff'd sub nom.,
   *Biotech. Indus. Org. v. District of Columbia*,
   496 F.3d 1362 (Fed. Cir. 2007) ................................................................................ 4

*Pharm. Rsch. & Mfrs. of Am. v. Walsh*,
   538 U.S. 644 (2003) ................................................................................................. 3

*Tenn. Wine & Spirits Retailers Ass'n v. Thomas*,
   588 U.S. 504 (2019) ................................................................................................. 7

*Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*,
   60 F.3d 27 (2d Cir. 1995) ......................................................................................... 8

*United States v. New York*,
    708 F.2d 92 (2d Cir. 1983) .................................................................................................. 9

*Variscite NY Four, LLC v. N.Y. State Cannabis Control Bd.*,
    152 F.4th 47 (2d Cir. 2025) .................................................................................................. 8

*Weight Watchers Int'l, Inc. v. Luigino's, Inc.*,
    423 F.3d 137 (2d Cir. 2005) ................................................................................................ 8

**Statutes**

15 U.S.C. § 78ff ............................................................................................................................ 2

Conn. Gen. Stat. § 4-160(a) ......................................................................................................... 9

Conn. Pub. Act 25-168, § 345(11) ........................................................................................... 1, 7

Conn. Pub. Act 25-168, § 346(b) ................................................................................................. 9

Conn. Pub. Act 25-168, § 347 ...................................................................................................... 9

**Other Authorities**

Deidre S. Gifford, Commissioner, Office of Health Strategy, Testimony Prepared for the Insurance and Real Estate Committee (Feb. 18, 2025), available at https://cga.ct.gov/2025/insdata/TMY/2025HB-06871-R000218-Gifford,%20Deidre,%20Commissioner-Office%20of%20Health%20Strategy-Supports-TMY.PDF. ............................................................................................................................ 4

Governor Ned Lamont, Testimony in Support of the Governor's Health Care Affordability Bills (Feb. 18, 2025), available at https://www.cga.ct.gov/2025/insdata/TMY/2025HB-06870-R000218-Lamont,%20Ned,%20Governor-Office%20of%20Governor%20Ned%20Lamont-Supports-TMY.PDF ................................................................................................................ 4

## INTRODUCTION

This is a price-control case. The opening brief of Plaintiff Healthcare Distribution Alliance ("HDA") (ECF No. 27-1) showed that the Drug Price Cap violates the Constitution's prohibition on extraterritorial state legislation because it ties the price of covered products sold in-state by pharmaceutical wholesalers and manufacturers to a statutory "reference price." The reference price is defined as the January 1, 2025 manufacturer's list price (Wholesale Acquisition Cost or "WAC") adjusted for inflation, unless the drug or biologic product comes off patent or is commercially introduced after that date. Conn. Pub. Act 25-168, § 345(11). Regardless of how much WAC increases in the rest of the United States, the Drug Price Cap freezes the Connecticut price at the reference price, adjusted for inflation.

The Drug Price Cap displays impermissible in-state favoritism and protectionism in two respects: (1) It mandates a lower, fixed price for Connecticut than the prevailing WAC price in other states and thus will ensure that the prices of covered products will be artificially lower in Connecticut than in New York, Massachusetts, and every other state where WAC is the prevailing price, and (2) the Drug Price Cap does not apply to the downstream licensed entities in Connecticut that actually sell covered products to consumers, *i.e.*, in-state retailers, medical practices, hospitals, and other healthcare providers. Those entities are free to charge whatever prices they wish; only upstream manufacturers and wholesalers located out of state are subject to the Drug Price Cap. These twin constitutional defects doom the Drug Price Cap under any interpretation of the Supreme Court's decision in *National Pork Producers Council v. Ross*, 598 U.S. 356 (2023).

The State's Opposition ("Opp.") (ECF No. 34) simply confirms the Drug Price Cap's constitutional flaws. The State argues at length that national drug prices are too high and must be curbed for the benefit of Connecticut residents. Opp. 1, 4–6. That is just our point: The law targets the out-of-state pricing of covered drugs and products, in violation of the Commerce Clause. The

State's goal of reducing drug prices for its consumers cannot justify a constitutional violation, particularly when drug prices are already addressed at the federal level.

The State's Opposition makes clear that the issues presented are ripe for this Court's decision as a matter of law. The State does not controvert any of the declarations filed in support of the Motion for Preliminary Injunction. The State explains that "[t]he parties largely agree on how the pharmaceutical supply chain works." Opp. 2. It acknowledges that "[m]anufacturers, not distributors, set the WAC." *Id.* at 3. It affirms HDA's statement that none of its members even has a distribution facility inside Connecticut. *Id.* at 16 n.16. Although the State disputes HDA's showing of irreparable harm, its argument is inconsistent with Second Circuit precedent. No additional facts are needed to grant the motion for preliminary injunction.[1]

## ARGUMENT

### I. HDA Is Likely to Succeed on Its Claim That the Drug Price Cap is Unconstitutional.

The State spills much ink on the Supreme Court's *Pork Producers* decision, insisting that HDA has mischaracterized it and urging this Court to follow Chief Judge Kendall's ruling[2] rather than the Eighth Circuit's holding in *Association for Accessible Medicines v. Ellison*, 140 F.4th 957 (8th Cir. 2025), and the Fourth Circuit's decision in *Association for Accessible Medicines v. Frosh*, 887 F.3d 664 (4th Cir. 2018), which *Pork Producers* cited with approval. *See* 598 U.S. at 374 (citing *Frosh*, 887 F.3d at 669).

---

[1] The State makes several factual assertions at Opp. 3–4. Although not material, the facts are not properly subject to judicial notice because they are contained in dated (2005 and 2017), private research reports and are not comparable to (for example) SEC filings where any inaccuracy may be punished by imprisonment. *Kravitz v. Tavlarios*, No. 20-2579-cv, 2021 WL 5365582 (2d Cir. Nov. 18, 2021); 15 U.S.C. § 78ff . The State also cites *Mont. ex rel. Knudsen v. Eli Lilly & Co. (In re Insulin Pricing Litig.)*, No. 2:23-cv-04214, 2025 WL 2573400 (D.N.J. Sept. 5, 2025), but that case involved pharmacy benefit managers (PBMs) and manufacturers, not distributors.

[2] *Ass'n for Accessible Meds. v. Raoul*, No. 24 C 544, 2025 WL 2764558 (N.D. Ill. Sept. 26, 2025).

2

The State is wrong. HDA's characterization of *Pork Producers* is correct, and this Court should follow the decisions of the Eighth Circuit and Fourth Circuit rather than Chief Judge Kendall's ruling. *Pork Producers* expressly stated that "price control or price affirmation statutes" are invalid if they tie "the price of . . . in-state products to out-of-state prices." *Id.* at 374 (quoting *Pharm. Rsch. & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 669 (2003)). That is precisely the vice of the Drug Price Cap. *Pork Producers* commented that *Frosh* read prior cases[3] involving state price regulations "in exactly the same way" as the Supreme Court did. *Id.* at 374. Although *Pork Producers* distinguished these prior price regulation cases, it did not overrule or reject them. It simply found them inapplicable to a California pig-slaughtering law having nothing to do with price (and carrying no risk of a race-to-the-bottom among states). The Eighth Circuit correctly observed that *Pork Producers* "[said] nothing new" about *Baldwin*, *Healy*, and *Brown-Forman* and applied those cases to strike down Minnesota's drug price cap due to its "specific impermissible extraterritorial effect of controlling prices outside of Minnesota." *Ellison*, 140 F.4th at 960–61.[4]

Ultimately, however, the State's parsing of *Pork Producers* is beside the point, because the Drug Price Cap flunks any reading of *Pork Producers*—even the State's.

First, the State's defense of the Drug Price Cap is premised on a misdescription of the statute. The State asserts that under the Drug Price Cap, there "are no 'Connecticut prices' vs. 'out-of-state' prices," and "WAC *is* the Connecticut price, as well as that for all the states." Opp. 16. That is incorrect. Beginning in 2026, the Connecticut price for covered products sold by manufacturers or wholesalers will be the "reference price," *i.e.*, the *January 1, 2025* WAC

---

[3] *Healy v. Beer Inst.*, 491 U.S. 324 (1989); *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573 (1986); *Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511 (1935).

[4] Chief Judge Kendall acknowledged the "specific impermissible extraterritorial effect[s]" that *Baldwin, Healy*, and *Brown-Forman* prohibited but simply misapplied that principle to the statute before her. *Raoul*, 2025 WL 2764558, at *4 (emphasis omitted).

3

(adjusted for inflation). That lower price is the basis for the State's claim that the Drug Price Cap will save Connecticut consumers money. Opp. 6.[5] In fact, there is already a gap between the Connecticut reference price and the prevailing WAC outside Connecticut; the WAC for hundreds of covered products has already increased in 2025 or will inevitably increase after January 1, 2026. *See* Louissaint Decl. ¶¶ 6–7 (ECF No. 27-5). The State does not dispute this evidence. The price differential between Connecticut and other states will only grow over time. Either out-of-state manufacturers, distributors, or consumers will absorb the costs not borne by Connecticut or (perhaps more likely) other states will respond by enacting their own price caps mandating even lower prices, setting off an "artificial race between legislatures to set the lowest" reference price for drugs. *Pharm. Rsch. & Mfrs. of Am. v. District of Columbia*, 406 F. Supp. 2d 56, 70 (D.D.C. 2005) (striking down D.C. drug price regulation under the Commerce Clause), *aff'd sub nom., Biotech. Indus. Org. v. District of Columbia*, 496 F.3d 1362 (Fed. Cir. 2007).

*Pork Producers* recognized the same risk as a reason for invalidating a state law under the Commerce Clause. *Pork Producers* explained in its discussion of *Healy* that, "if the Connecticut law stood, 'each of the border States' could 'enac[t] statutes essentially identical to Connecticut's' in retaliation—a result often associated with avowedly protectionist economic policies." *Pork*

---

[5] *See also, e.g.*, Governor Ned Lamont, Testimony in Support of the Governor's Health Care Affordability Bills (Feb. 18, 2025) (legislative proposal was aimed at "limiting generic and off-patent drug price increases to the annual rate of inflation"), available at https://www.cga.ct.gov/2025/insdata/TMY/2025HB-06870-R000218-Lamont,%20Ned,%20Governor-Office%20of%20Governor%20Ned%20Lamont-Supports-TMY.PDF; Deidre S. Gifford, Commissioner, Office of Health Strategy, Testimony Prepared for the Insurance and Real Estate Committee (Feb. 18, 2025) ("[M]ore than 400 generic prescription drugs . . . would have had their wholesale price limited by this legislation," which "would have reduced wholesale costs paid for off-patent branded drugs by at least $9 million."), available at https://cga.ct.gov/2025/insdata/TMY/2025HB-06871-R000218-Gifford,%20Deidre,%20Commissioner-Office%20of%20Health%20Strategy-Supports-TMY.PDF.

4

*Producers*, 598 U.S. at 373 (alteration in original) (quoting *Healy,* 491 U.S. at 339–40). In invalidating "'attempts to give local consumers an advantage over consumers in other States,'" *Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 577–78 (1997) (quoting *Brown-Forman*, 476 U.S. at 580), the Supreme Court has opined that "[a]voiding this sort of 'economic Balkanization,' and the retaliatory acts of other States that may follow, is one of the central purposes of our negative Commerce Clause jurisprudence," *id.* at 577 (quoting *Hughes v. Oklahoma*, 441 U.S. 322, 325 (1979)); *see also C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 390 (1994) (Commerce Clause "prohibit[s] . . . laws that would excite those jealousies and retaliatory measures the Constitution was designed to prevent").

In a similar case, the State of New York conceded the unconstitutional nature of a prohibition on the pass-through of opioid taxes to New York consumers. Under the law, "New York opioid customers would be protected from any price increases in their purchases," and "out-of-state drug purchasers, with no representation in New York's legislature or executive, would bear the cost of New York's policy program. This shifting of burdens and benefits is antithetical to the idea of intra-national free trade and demonstrates why the Dormant Commerce Cause exists, i.e., to prohibit discrimination as to any part of the stream of commerce—from wholesaler to retailer to consumer." *Healthcare Distrib. All. v. Zucker*, 353 F. Supp. 3d 235, 262 (S.D.N.Y. 2018) (internal quotation marks and citation omitted)*, rev'd in part on other grounds sub nom., Ass'n for Accessible Meds. v. James*, 974 F.3d 216 (2d Cir. 2020). The Second Circuit did not disturb the invalidation of the cost-pass-through prohibition. 974 F.3d at 228. As the district court noted, it remains "constitutionally invalid." *Zucker*, 2021 WL 12103902, at *2 (S.D.N.Y. Oct. 20, 2021).

The Drug Price Cap is protectionist for the additional reason that it does not apply to the Connecticut in-state licensed retailers, medical practices, and hospitals that actually sell covered

5

products to consumers. The Drug Price Cap thus gives preferential treatment to in-state sellers over upstream manufacturers and wholesalers located out of state. The Fourth Circuit noted the very same defect in striking down a Maryland drug price regulation in *Frosh*, 887 F.3d at 671 ("'[T]he retailers that sell the drug directly to the consumer cannot be held liable under the Act; only '[a] manufacturer or wholesale distributor' is prohibited from 'engag[ing] in price gouging.'") (second and third alterations in original); *see also Ore. Waste Sys., Inc. v. Dep't of Env't Quality*, 511 U.S. 93, 99 (1994) (discrimination "simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter").

Once the State's misdescription of the Drug Price Cap is corrected, the State's defenses of the law fall apart. The State concedes that *Healy* and related price-regulation cases prevent a state from capping "the prices merchants could charge in relation to prices in other states" (Opp. 15) or "tethering the prices of their in-state products to those of out-of-state products" (*id*. 14). But that is exactly what the Drug Price Cap does. The State acknowledges that such statutes are "discriminatory or protectionist." *Id*. So is the Drug Price Cap. The State further concedes that a state may not "deprive[] businesses and consumers in other States of whatever competitive advantages they may possess." *Id*. at 11–12 (quoting *Pork Producers*, 598 U.S. at 374). The Drug Price Cap has those unconstitutional features.

The State observes there was no allegation in *Pork Producers* "that the California law '[sought] to advantage in-state firms.'" *Id*. at 11 (quoting *Pork Producers*, 598 U.S. at 370). This case is different. Here the Drug Price Cap prefers in-state Connecticut sellers of covered products to out-of-state upstream manufacturers and wholesalers.

The State cites *Pharmaceutical Research & Manufacturers of America v. Concannon*, 249 F.3d 66 (1st Cir. 2001), *aff'd sub nom., Pharm. Rsch. & Mfrs. of Am. v. Walsh*, 538 U.S. 644 (2003),

6

but that case supports HDA. *Concannon* distinguished the Maine law at issue from one requiring covered drugs to be sold at "a certain price." *Id*. at 81–82. But the Connecticut Drug Price Cap does just that by specifying a particular "reference price" for Connecticut sales. Conn. Pub. Act 25-168, § 345(11). *Concannon* acknowledged that "price control" schemes have been held invalid where they sought "to benefit the buyers and sellers in the home state," 249 F.3d at 81, which is exactly what the Drug Price Cap does in Connecticut.

The State suggests that HDA seeks a ruling that would disrupt state environmental laws, health and safety rules, and other regulations. Opp. 17–18. To the contrary: HDA's argument is limited to price caps and is supported by a long line of precedent striking down state price controls. Indeed, the shoe is on the other foot. The State's position would open a Pandora's box permitting any jurisdiction to set its own unilateral price caps on any and all interstate goods—whether gasoline, grocery items, or anything else—in the name of consumer protection. This would provoke the kind of destructive cycle that prompted the adoption of the Constitution in the first place. *See Tenn. Wine & Spirits Retailers Ass'n v. Thoma*s, 588 U.S. 504, 517 (2019) (Commerce Clause reflects "an immediate reason for calling the Constitutional Convention: the conviction that in order to succeed, the new Union would have to avoid the tendencies toward economic Balkanization that had plagued relations among the Colonies and later among the States under the Articles of Confederation") (citation omitted).[6]

## II. HDA's Members Will Suffer Irreparable Harm Absent an Injunction.

The State is wrong in arguing that HDA has delayed in seeking relief. Opp. 26–27. The Drug Price Cap does not take effect until January 1, 2026. HDA filed suit on October 14, 2025,

---

[6] The State challenges HDA's invocation of the Due Process Clause and structural constitutional principles. Opp. 22–26. But *Pork Producers* cited the very same principles to illustrate the limits on state extraterritorial regulation. *See* 598 U.S. at 376.

7

and sought expedited consideration (which the Court granted) so that a pre-enforcement injunction could be issued before the Drug Price Cap takes effect. *See* ECF Nos. 1, 31–32. Hence, HDA has moved with due speed to ensure its members will not be harmed by the Drug Price Cap.

The cases cited by the State are inapposite because they involve the situation where plaintiffs tolerate ongoing injury for a significant period of time before seeking judicial relief. "The cases in which [the Second Circuit has] found that a delay rebutted the presumption of irreparable harm are trademark and copyright cases in which . . . the owner of the mark or right had concluded that there was no infringement but later brought an action because of the strength of the commercial competition. In these cases, . . . the trademark or copyright owners were well aware of their rights and had concluded that they were not violated." *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 39 (2d Cir. 1995) (citations omitted). The State also cites *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137 (2d Cir. 2005), another inapposite trademark case. Moreover, *Weight Watchers* noted that "a short delay does not rebut the presumption [of irreparable harm] where there is a good reason for it." *Id.* at 144.

The State urges the Court not to presume irreparable harm based on HDA's allegation of a Commerce Clause violation. Opp. 27–29. But as the Second Circuit has instructed in the Commerce Clause context, when "a plaintiff alleges constitutional injury, 'a strong showing of a constitutional deprivation that results in noncompensable damages ordinarily warrants a finding of irreparable harm.'" *Variscite NY Four, LLC v. N.Y. State Cannabis Control Bd.*, 152 F.4th 47, 60 (2d Cir. 2025) (quoting *A.H. ex rel. Hester v. French*, 985 F.3d 165, 176 (2d Cir. 2021)). And "[t]he denial of a constitutional right ordinarily warrants a finding of irreparable harm." *Hester*, 985 F.3d at 184.

In any event, there is no need for a presumption of irreparable harm. On January 1, 2026, HDA's members will face a Hobson's choice: either (1) buy covered products at the manufacturer's price *above* the January 1, 2025 WAC and sell to Connecticut customers at a lower reference price, or (2) sell to Connecticut customers at a price above the reference price and face severe civil penalties under the Drug Price Cap. *See* Conn. Pub. Act 25-168, § 346(b). And if distributors attempt to avoid this dilemma by withdrawing a covered product from Connecticut, they will face a separate $500,000 civil penalty. *Id*. § 347. This scheme plainly results in irreparable harm, and the State has no answer. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992); *Nat'l Fuel Gas Distrib. Corp v. Christian*, --- F. Supp. 3d ---, No. 1:25-CV-0525 (GTS/MJK), 2025 WL 2634310, at *13 (N.D.N.Y. June 16, 2025) (plaintiffs showed irreparable harm "in the form of having to either pay Draconian penalties . . . or disrupt their existing . . . business practices" in dormant Commerce Clause case).

The State confirms that it will assert Eleventh Amendment and sovereign immunity to bar any claim for after-the-fact compensation. Opp. 29. It makes a cursory reference to Chapter 53 of the Connecticut General Statutes (*id*.), but that argument "simply misses the mark; in deciding whether a federal plaintiff has an available remedy at law that would make injunctive relief unavailable, federal courts may consider only the available federal legal remedies." *United States v. New York*, 708 F.2d 92, 93 (2d Cir. 1983). In addition, Chapter 53 provides that plaintiffs may *not* pursue a money damages claim against the State in court unless they receive a waiver from the Claims Commissioner. *Miller v. Egan*, 828 A.2d 549, 561 (Conn. 2003). The State cites no example where a waiver has ever been granted in a case like this. Indeed, the Claims Commissioner may authorize a suit only after deeming it "just and equitable" and only if "the state, were it a private person, could be liable." Conn. Gen. Stat. § 4-160(a). The State makes no effort

9

to explain how a private person could be held liable for a dormant Commerce Clause violation and thus how the Claims Commissioner would even have the authority to consider a waiver here.

### III. The Balance of Hardships and Public Interest Militate in Favor of an Injunction.

The State does not deny that multiple provisions of federal law (including Medicare, the Inflation Reduction Act's Drug Price Negotiation Program, Section 340B of the Public Health Service Act, and the federal drug price MFN program) already address the issue of drug prices, and a preliminary injunction will simply preserve the status quo in Connecticut that has always existed before the Drug Price Cap's enactment.

The State contends that the public interest in lowering drug prices outweighs the irreparable harm HDA faces. Opp. 30. But consumer protection cannot justify a Commerce Clause violation. *See Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 353 (1977) (state law that violates Commerce Clause cannot be saved "even if enacted for the declared purpose of protecting consumers"). The State lacks an "interest in the enforcement of an unconstitutional law." *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013) (citation and internal quotation marks omitted). That is particularly true here, where the Drug Price Cap will disrupt the national pharmaceutical market, which is not in the public interest. The Drug Price Cap threatens to disturb the essential logistical function performed by wholesale distributors and ultimately imperil patient access to important medicines, as shown by numerous submissions to the General Assembly, which the State does not deny. *See* Pls.' Mem. Supp. Mot. Prelim. Inj. 21–22 & n.8 (ECF No. 27-1). Thus, this case is not simply about harm to interstate markets and wholesale distributors; it is also about protecting patients' access to covered products. The public interest and balance of the equities weigh decidedly in HDA's favor.

## CONCLUSION

HDA's motion for preliminary injunction should be granted.

Dated: November 25, 2025
Hartford, Connecticut

Respectfully submitted,

*/s/ Thomas J. Finn*
Thomas J. Finn (ct20929)
Snigdha Mamillapalli (ct31142)
**McCarter & English, LLP**
185 Asylum Street, 36th Floor
Hartford, CT 06103
Tel.: (860) 275-6700
Fax: (860) 724-3397
tfinn@mccarter.com
smamillapalli@mccarter.com

Jonathan S. Massey
(admitted *pro hac vice*)
Bret R. Vallacher
(admitted *pro hac vice*)
Austin S. Martin
(admitted *pro hac vice*)
**MASSEY & GAIL LLP**
1000 Maine Ave SW, Suite 450
Washington, D.C. 20024
Tel.: (202) 652-4511
Fax: (312) 379-0467
jmassey@masseygail.com
bvallacher@masseygail.com
amartin@masseygail.com

*Attorneys for Healthcare Distribution Alliance*

## CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2025, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated below. Parties may access this filing through the Court's CM/ECF System.

By: */s/ Thomas J. Finn*
Thomas J. Finn (ct20929)